Argued November 19, affirmed December 20, 1976, reconsideration denied January 26, petition for review denied February 1, 1977

DIETRICH, *Appellant,*

*v.*

BROOKS et al, *Respondents.*

(No. 93794, CA 6692)

In the Matter of the Application of John Lawrence Dietrich for a Writ of Habeas Corpus,

DIETRICH, *Appellant,*

*v.*

BROOKS, *Respondent.*

(No. 93795, CA 6693)

(Consolidated cases)

558 P2d 357

*Steven H. Gorham,* Marion-Polk Legal Aid Service, Inc., Salem, argued the cause and filed the brief for appellant.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and Karen H. Green, Certified Law Student, Salem.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

This is a consolidated appeal from an order denying a writ of habeas corpus and from a judgment declaring ORS 426.290 to be constitutional.

On August 28, 1975, the appellant was involuntarily committed to the Mental Health Division pursuant to ORS 426.130. That proceeding is not challenged. Appellant was then confined in the Oregon State Hospital until November 2, 1975, when he was released on trial visit pursuant to ORS 426.280.

On December 26, 1975, appellant was returned from trial visit after two persons signed an affidavit requesting the Superintendent of the Oregon State Hospital to return him to the hospital. The return was accomplished without a hearing.

On January 19, 1976, these actions were commenced. Appellant was discharged from the Oregon State Hospital on February 23, 1976. These actions were heard by the circuit court on March 1, 1976. The trial court dismissed the habeas corpus action as moot and entered a declaratory judgment holding that ORS 426.290 is constitutional and that on-site preliminary hearings and full trial visit revocation hearings are not constitutionally required.

## I. DECLARATORY JUDGMENT

ORS 426.290 provides the procedure by which a trial visit of a person committed to the Mental Health Division may be terminated. If two persons swear to a complaint, the division or its local delegee shall take custody of the person and assign him to a suitable facility. If the acts complained of indicate to the examining physician of the receiving facility that the person should no longer be permitted to remain on trial visit, the person shall be admitted to that facility. The person may insist upon returning to the same facility from which he was released. There need be no judicial hearing, but if the trial visit has lasted at least 90 days, an administrative hearing with the right to

counsel shall be afforded within seven days of the return.[1]

Appellant challenges the statute and his return under it on due process and equal protection grounds, invoking Article I, §§ 10, 11, of the Oregon Constitution, and the Fifth and Fourteenth Amendments of the United States Constitution.

## A. *Due Process*

The syllogism of appellant's argument is that a trial visit from a mental hospital is analogous to parole from a penitentiary, that *Morrissey v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972), holds that the Due Process Clause requires hearings with notice, counsel, and confrontation before parole can be revoked, and therefore that the same constitutional protections as are required for revocation of parole are required for revocation of its analogous mental health counterpart, a trial visit.

There is superficial appeal to the analogy between parole and trial visits. ORS 426.280 and 426.290, as first enacted in 1915, provided for "parole" from institutions and that word remained until the legislature substituted the phrase "trial visit" for "parole" throughout the two statutes. Oregon Laws 1961, ch 228, § 2. The more familiar term "parole" is sometimes used imprecisely to convey rough understanding of the

---

[1]ORS 426.290 provides:

"(1) If a written complaint against a patient on trial visit from the division is received by the division and the complaint is sworn to by a citizen of Oregon before an officer qualified to administer an oath, the patient named in the complaint shall be sent to and received by a facility for the mentally ill designated by the division. If the acts complained of are such as to indicate to the examining physician of the receiving facility that the patient should no longer be permitted to remain on trial visit, the patient shall be admitted thereto.

"(2) Upon voluntary application to be admitted thereto, every patient on trial visit must be received by the facility from which he was released on trial visit.

"(3) Every patient on trial visit received by a facility for the mentally ill under this section shall be admitted to the facility without examination as to his sanity before any court or judge having jurisdiction over such matters."

less familiar term "trial visits."[2] The description of the purpose of a parole in *Morrissey v. Brewer* sounds much like the description of the purpose of a trial visit: "* * * to help individuals reintegrate into society as constructive individuals as soon as they are able * * *." 408 US at 477. In each case, there is a release from confinement to conditional liberty with the objective of reintegration of the individual into normal life, subject to reconfinement upon failure.

Reasoning by analogy, however, has its limits. The appellant would have us extend it *ad absurdum* beyond the points of similarity between parole and trial visits. In reality, there are profound differences of nature, degree and function between the two concepts which make different due process considerations appropriate.

The societal purposes of parole and trial visits are different. Although penology is now called "corrections," *see,* e.g., ORS chs 421 and 423, and although Article I, § 15, of the Oregon Constitution exhorts us to apply punishment upon principles of reformation wherever possible for the benefit of those amenable to correctional treatment, *see Kent v. Cupp,* 26 Or App 799, 802, 554 P2d 196, *rev den* (1976), still the underlying nature of imprisonment and parole is penal and deterrent, however enlightened its philosophical overlay may be. A trial visit, on the other hand, is one therapeutic device in a program of medical treatment of a mentally ill person. There is nothing penal or deterrent about it. Although the

---

[2]For example, during committee hearings on the 1975 revision to the Mental Health Code, the following exchange occurred:

"Senator Cook: 'But they're really out on parole in effect.'

"Dr. Kole: 'In essence, they are.'

"Senator Cook: 'Out on trial.'

"Dr. Kole: 'I think one could say this is a parole status.'

"Senator Cook: 'That's correct.'

"Dr. Kole: 'It is a revocation of parole is what it is.' " Minutes, Senate Committee on Judiciary, January 22, 1975, page 14, supplemented by Tape 2, Side 2, at No. 1116.

corrections and mental health programs function similarly in several respects, and even overlap in their client populations, the basic purposes and societal expectations of each are fundamentally different.

The length of the deprivation of liberty is different. By statute, a trial visit of less than 90 days may be terminated without hearing. Parole, however, lasts for "such time as satisfies the State Board of Parole" limited only by the expiration of the parolee's sentence, ORS 144.310, which could be from six months, ORS 144.050, to life. Any interference with liberty is constitutionally significant, but the relative gravity of the interference influences the amount or nature of the process which is due.

The two types of conditional liberty are also functionally different in many ways, but particularly in their relationship with the institutional program. Trial visits are essentially a part of the institutional program to prepare the patient for his return. The very term "trial visit" implies an expectation that the patient may go back and forth between hospital and home until a satisfactory adjustment to community living is achieved. If the trial visit is analogous to any correctional program, then it is to the institution-related work release program, cf. ORS 144.500, rather than parole. Parole works differently. A prisoner is selected for parole by a separate, non-institutional branch of government, the State Board of Parole, and parole is also terminated by the Board. Thus the relationship of the conditional liberty with the institutional program is integral with the home visit and negligible with parole, and is therefore more clearly within the contemplation of the initial order of commitment.

The Supreme Court noted in *Morrissey v. Brewer,* that different forms of deprivation of liberty require different forms of due process protection. The Court stated:

"* * * [D]ue process is flexible and calls for such

procedural protections as the particular situation demands. '[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' [citation omitted] To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." 408 US at 481.

The question, under *Morrissey v. Brewer,* is not whether the same procedures are provided as are required for parole revocation, but whether these procedures are appropriate for involuntary returns from trial visits, in view of the purpose and function of that form of restriction of liberty.[3]

Termination of a trial visit is not an isolated event. If it were, then a denial of liberty based upon the sworn statements of two people and the judgment of an admitting physician, standing alone, would be unconstitutional for lack of due process. Rather, it is one of a sequence of events within a course of confinement and treatment. It is the procedural protection which surrounds that course of confinement and treatment which must be measured against the Due Process Clause to determine if it is appropriate to the public purpose to be served and to the nature of the individual loss to be guarded against.

■ We hold that the entire pattern of protection is constitutionally valid. A person is accorded notice, counsel, and confrontation at the initial commitment. ORS 426.100, *State v. O'Neill,* 274 Or 59, 545 P2d 97 (1976). Involuntary confinement is limited to 180

---

[3] *Cf. Humphrey v. Cady,* 405 US 504, 92 S Ct 1048, 31 L Ed 2d 394 (1972) (adjudication of sexually dangerous persons); *In re Bye,* 12 Cal 3d 96, 115 Cal Rptr 382, 524 P2d 854 (1974), *cert den* 420 US 996 (1975); *United States ex rel. Shaban v. Essen,* 386 F Supp 1042 (Ed NY 1974) (termination of outpatient status for involuntarily committed drug addicts).

days, ORS 426.130(3),[4] and cannot be extended except by consent or by a similar judicial hearing, ORS 426.301 to 426.307. The 180-day time limit is not tolled during the trial visit. Further, where limited confinement is initiated by judicial procedure, it is within the discretion of the legislature to prefer the process of returning appellant to the hospital upon sworn complaints and medical judgment, to a process which interjects yet another adversarial proceeding at a time when medical attention often ought not to be delayed. We therefore conclude that the entire statutory scheme of involuntary commitment, including the return to the institution following a trial visit, provides procedural safeguards which satsify the requirements of the Due Process Clause.

B. *Equal Protection*

Appellant next asserts that ORS 426.290 is unconstitutional because subsection (4) accords a hearing to persons involuntarily returned from trial visits of at least 90 days which is denied to those whose trial visit was of less than 90 days.

We believe that the legislature could reasonably conclude that where the trial visit lasts for over one-half of the maximum duration of the involuntary commitment, the person has been at liberty for long enough a time that an additional hearing would be desirable to safeguard against imprudent termination of liberty. The distinction is therefore reasonably related to the statutory purpose.

The declaratory judgment is therefore affirmed.

## II. HABEAS CORPUS

In *State v. Van Tassel,* 5 Or App 376, 484 P2d 1117 (1971), we held as a matter of policy that there were sufficient "collateral effects," particularly to reputa-

---

[4]Thus, this case is distinguishable from those such as *Meisel v. Kremens,* 405 F Supp 1253 (ED Pa 1975), which apply *Morrissey v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972), *in toto* to indefinite home leave.

tion, flowing from an involuntary mental commitment, that the release of the petitioner from confinement would not render an appeal from that order moot. The issue in this case is whether there are sufficient additional collateral effects which flow from the termination of a trial visit, beyond those which flow from the original commitment, to require the court to hear a challenge to the confinement even though the confinement has terminated. We hold that any incremental injury to reputation beyond that occasioned by the original commitment is negligible and that no financial liability under ORS 179.620 beyond that envisioned by the original commitment has been created. Therefore, we hold that the habeas corpus petition was correctly dismissed as moot.

Affirmed.