Argued and submitted September 30, 1993, reversed and remanded for further proceedings March 23, petition for review denied May 24, 1994 (319 Or 149)

In the Matter of
Mary Ann Bryant, aka Mary Ann McWhirter,
aka Amber Dawn Christine Nelson,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Appellant,*

*v.*

## MARY ANN BRYANT,
aka Mary Ann McWhirter,
aka Amber Dawn Christine Nelson,
*Respondent.*

(92 MH 0265; CA A79089)

871 P2d 129

Paul E. Meyer, Assistant County Counsel, Douglas County, argued the cause and filed the brief for appellant.

Theresa M. Kohlhoff filed the brief for respondent.

Before Deits, Presiding Judge, and Richardson, Chief Judge,* and Riggs, Judge.

DEITS, P. J.

---

* Richardson, C. J., *vice* Durham, J.

## DEITS, P. J.

Respondent was found to be mentally ill and was committed to the Mental Health Division in November, 1992. At that time, she was given outpatient commitment status which allowed her to receive treatment for her condition on an outpatient basis subject to certain conditions, one of which was that she must abstain from all nonprescribed alcohol and drugs. In February, 1993, a notice of revocation of her outpatient status was filed. The proposed revocation was based on respondent's alleged use of nonprescribed drugs and alcohol. A hearing was held and evidence was introduced that she had used prohibited drugs. The trial court found, by "clear and convincing evidence," that she had "substantially violated the conditions of outpatient commitment." However, the court denied the state's revocation request, because it concluded that "the due process clause of the federal constitution requires Mental Health to prove that the AMIP (alleged mentally ill person) is mentally ill on the day of the revocation hearing." The court concluded that, because the state did not present any evidence of respondent's mental illness as of the date of the revocation hearing, the state had failed to prove a matter that was essential to the revocation of her outpatient commitment status.

The state appeals the trial court's order denying its request. It assigns error to the trial court's conclusion that, in order to revoke the outpatient commitment of a person who has been subject to an involuntary civil commitment, the Due Process Clause of the United States Constitution requires the state to prove that the person remains mentally ill at the time of the revocation proceeding.[1] We conclude that the trial court was wrong and reverse.

As we discussed in *State v. Johansen*, 125 Or App 365, 866 P2d 470 (1993), at the time of an initial involuntary civil commitment, a person is given extensive procedural protections, including notice, the right to legal counsel and a meaningful opportunity to be heard. ORS 426.070 to

---

[1] The Due Process Clause requires that the state provide "due process of law" when it deprives a person of "life, liberty, or property * * *." US Const, Amend XIV, § 1.

426.130. At the commitment hearing, the state has the burden to prove by clear and convincing evidence that the person is mentally ill. ORS 426.130(1)(b). We have held that these commitment procedures provide procedural safeguards that satisfy the requirements of the Due Process Clause. *State v. Johansen, supra*; *Dietrich v. Brooks*, 27 Or App 821, 827-28, 558 P2d 357, *rev den* (1976).

If a person is found to be mentally ill at the initial commitment proceeding, the court may commit the person to the custody of the Mental Health Division for care and treatment. ORS 426.130(1)(b)(C). When a person is committed to the division for care and treatment, the division may place the committed person in outpatient commitment under ORS 426.130(1)(b)(C)(ii), if an adequate treatment facility is available. ORS 426.127. In addition, the division may impose conditions on the outpatient commitment and may make changes in the conditions during the course of treatment.[2] Under the pertinent statutes, the decision whether a person who has been found to be mentally ill is given outpatient or inpatient care is a treatment decision that does not affect the person's status as a person who has been involuntarily committed.

---

[2] ORS 426.127 provides, in part:

"The following provisions are applicable to outpatient commitment under ORS 426.130 as described:

"(1) The division may only place a person in an outpatient commitment if an adequate treatment facility is available.

"(2) Conditions for the outpatient commitment shall be set at the time of the hearing under ORS 426.095 by the community mental health and developmental disabilities program director, or a designee for the director, for the county in which the hearing takes place. The conditions shall include, but not be limited to, the following:

"(a) Provision for outpatient care.

"(b) A designation of a facility, service or other provider to provide care or treatment.

"* * * * *

"(4) Any outpatient commitment ordered under this section is subject to the provisions under ORS 426.275.

"(5) The community mental health and developmental disabilities program director or designee, for the county where a person is on outpatient commitment, may modify the conditions for outpatient commitment when a modification is in the best interest of the person. The director or designee shall send notification of such changes and the reasons for the changes to all those who received a copy of the original conditions under ORS 426.278."

A process for revoking outpatient commitment status is set forth in the statutes. ORS 426.275 provides, in part:

"The following are applicable to placements of mentally ill persons that are made as conditional release under ORS 426.125, outpatient commitments under ORS 426.127 or trial visits under ORS 426.273 as described:

"(1) If the person responsible under this subsection determines that the mentally ill person is failing to adhere to the terms and conditions of the placement, the responsible person shall notify the court having jurisdiction that the mentally ill person is not adhering to the terms and conditions of the placement.

"* * * * *

"(2) On its own motion, the court with jurisdiction of a mentally ill person on such placement may cause the person to be brought before it for a hearing to determine whether the person is or is not adhering to the terms and conditions of the placement. The person shall have the same rights with respect to notice, detention stay, hearing and counsel as for a hearing held under ORS 426.095. The court shall hold the hearing within five judicial days of the date the mentally ill person receives notice under this section. The court may allow postponement and detention during postponement as provided under ORS 426.095.

"(3) Pursuant to the determination of the court upon hearing under this section, a person on placement shall either continue the placement on the same or modified conditions *or shall be returned to the division for involuntary care and treatment on an inpatient basis subject to discharge at the end of the commitment period or as otherwise provided under this chapter.*" (Emphasis supplied.)

In this case, at the initial commitment hearing, respondent stipulated that she was mentally ill. She was committed to the division for care and treatment and placed on outpatient commitment under ORS 426.127. As discussed above, in February, 1993, she was notified that the division was revoking her outpatient commitment because of alleged violations of the conditions of her outpatient commitment. Pursuant to ORS 426.275, a hearing was held and the trial court found that she had violated the conditions of her outpatient commitment. Respondent, in fact, admitted some of the violations. The court concluded, however, that the Due Process Clause required the state to prove that respondent

remained mentally ill before it could revoke her outpatient commitment. It held that the state's failure to present evidence on this issue prevented the court from revoking respondent's outpatient commitment.

We disagree with the court's conclusion that the state must prove that respondent remains mentally ill before her outpatient commitment may be revoked. First, although the pertinent statutes require that at the time of an involuntary commitment, the state must prove by clear and convincing evidence that the person is mentally ill, there is nothing in the statutes that imposes a similar requirement when a patient's outpatient commitment is revoked. Further, we do not believe that the Due Process Clause imposes that requirement.

We have not previously considered the question of whether due process requires that the state prove a person's continued mental illness at the time of revocation of outpatient commitment. In *Dietrich v. Brooks, supra*, we addressed the question of whether the statutory procedures for the revocation of a trial visit placement of a person who had been involuntarily committed under ORS 426.130 satisfied the Due Process Clause. Similar to outpatient commitment, the division may grant trial visit placement to a patient who is being treated on an inpatient basis "for a period of time and under any conditions the division shall establish." ORS 426.273. The revocation of trial visit placement and outpatient commitment are both governed by ORS 426.275. In *Dietrich*, we concluded that those procedures satisfied due process:

> "Termination of a trial visit is not an isolated event. If it were, then a denial of liberty based upon the sworn statements of two people and the judgment of an admitting physician, standing alone, would be unconstitutional for lack of due process. Rather, it is one of a sequence of events within a course of confinement and treatment. *It is the procedural protection which surrounds that course of confinement and treatment which must be measured against the Due Process Clause to determine if it is appropriate to the public purpose to be served and to the nature of the individual loss to be guarded against.*" 27 Or App at 827. (Emphasis supplied.)

We held that

"the entire pattern of protection is constitutionally valid. A person is accorded notice, counsel, and confrontation at the initial commitment. ORS 426.100, *State v. O'Neill*, 274 Or 59, 545 P2d 97 (1976). Involuntary confinement is limited to 180 days, ORS 426.130(3), and cannot be extended except by consent or by a similar judicial hearing, ORS 426.301 to 426.307. * * * We therefore conclude that the entire statutory scheme of involuntary commitment, including the return to the institution following a trial visit, provides procedural safeguards which satisfy the requirements of the Due Process Clause." 27 Or App at 827-28. (Footnote omitted.)

In a recent decision involving the question of whether the recommitment process for a person who had previously been involuntarily committed satisfied due process, we cited the above language with approval in concluding that the recommitment process also satisfied due process. *State v. Johansen, supra,* 125 Or App at 368.

Respondent and the trial court relied on the Supreme Court's decision in *Foucha v. Louisiana,* ____ US ____, 112 S Ct 1780, 118 L Ed 2d 437 (1992). That case, however, is not controlling here. It did not involve a civil commitment process; rather it was a criminal case in which the defendant was found not guilty by reason of insanity and was committed to a psychiatric hospital for an indefinite time period. The state acknowledged in *Foucha* that the defendant was no longer mentally ill. Because of that, the Supreme Court concluded that there was no longer any basis under Louisiana's statutes to keep the defendant in custody. That is very different from this case. Here, respondent was being held under a 180-day civil commitment that is not challenged, and it is not agreed that respondent is no longer mentally ill.

We conclude that due process does not require the state to prove that a person remains mentally ill at the time that outpatient commitment status is revoked. Respondent does not argue that she did not receive due process in the original commitment proceeding and her involuntary commitment is not affected by this decision, which concerns only the manner of treatment. Evaluating the "entire pattern of protection" in the commitment process, respondent did

receive procedural due process. The trial court erred in denying the state's request to revoke respondent's outpatient commitment on that basis.

Reversed and remanded for further proceedings.